J-S11025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOEL VAZQUEZ | |
| Appellant | No. 1241 EDA 2015 |

Appeal from the Judgment of Sentence February 19, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003099-2012

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED MAY 06, 2016**

Joel Vazquez appeals *nunc pro tunc* from the judgment of sentence imposed February 19, 2013, in the Lehigh County Court of Common Pleas. The court sentenced Vazquez to a term of 70 months to 30 years' imprisonment, following his negotiated guilty plea to two counts of aggravated assault and one count of recklessly endangering another person ("REAP").[1] On appeal, he challenges only the discretionary aspects of his sentence. For the reasons below, we affirm.

The facts underlying Vazquez's guilty plea are summarized by the trial court as follows:

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and (a)(4), and 2705, respectively.

On June 19, 2012, Mandy and Brian Bailey and their four day old child were returning to their home located in Whitehall, Lehigh County, Pennsylvania when they encountered Jessica Vazquez and [her husband, Joel Vazquez]. [Jessica] was dropping off her two minor children that she shares with Mr. Bailey for a visit. As the Baileys and the children were walking towards their apartment, [Vazquez] exited his car and began yelling at them. [Vazquez] first approached Mandy Bailey, pushed her in the chest and ripped her shirt. Brian Bailey went to his wife to assist her and [Vazquez] attacked him, stabbing him in the back with a steak knife. At the time, Mr. Bailey was holding the four day old infant in a car seat and the force of [Vazquez's] blow caused him to drop the car seat. Mrs. Bailey watched as the infant seat rolled over on the sidewalk and she screamed for help.

While neighbors attempted to call 9-1-1, Mrs. Bailey realized that she was bleeding profusely from her chest area, having been stabbed in the initial altercation with [Vazquez]. Witnesses in the area attempted to help the Baileys and their children.

While waiting for EMS to arrive, [Vazquez] again attempted to stab Mrs. Bailey and was overheard stating that he was going to "finish this." [Vazquez] then stabbed himself in the stomach. Eyewitnesses identified Vazquez as the individual who stabbed the Baileys.

The Baileys were taken to the hospital where it was determined that the stab wound to Mandy Bailey's chest had missed all of her vital organs, but was within inches of her heart. She was treated with stitches. Mr. Bailey's stab wound to his back was treated with medical staples. Fortunately, all of the minor children were physically unharmed.

The steak knife in question was recovered at the scene and was 4 to 6 inches in length.

Trial Court Opinion, 7/8/2015, at 3-4.

Vazquez was arrested and charged with attempted homicide (two counts), aggravated assault (four counts), simple assault (two counts) and REAP.[2]  On September 25, 2012, he filed a notice of insanity or mental infirmity, averring that he suffers from paranoid schizophrenia. Nevertheless, despite having documented evidence of his mental illness, Vazquez decided to proceed with a guilty plea.[3]  As noted above, on January 18, 2013, Vazquez entered a negotiated guilty plea to two counts of aggravated assault and one count of REAP.[4]  As part of the plea agreement, the parties agreed Vazquez would receive a sentence in the standard range of the sentencing guidelines, and one count of aggravated assault would be subject to a deadly weapon-used enhancement.  *See* N.T., 1/18/2013, at 2.

On February 19, 2013, the trial court sentenced Vazquez to a term of 54 months to 20 years' imprisonment for one count of aggravated assault, a

---

[2] 18 Pa.C.S. §§ 901/2501(a), 2702(a)(1) and (a)(4), 2701(a)(1), and 2705, respectively.

[3] At the plea hearing, Vazquez explained he was hospitalized in August of 2011 after he began "stabbing" himself.  N.T., 1/18/2013, at 13.  It was during that hospitalization when he was first diagnosed with schizophrenia. *Id.* at 11.  He testified he was hospitalized again in November of 2011 after he "freaked out and [] grabbed [his] wife's kids and [] threatened them with a knife."  *Id.* at 15.  Vazquez acknowledged that he had been off his medication for four to six months when the incident at issue occurred.  *Id.* at 17.

[4] Counsel informed the trial court at the plea hearing that Vazquez chose to plead guilty, rather than guilty but mentally ill, because he believed that such a plea would "adversely affect his opportunity for parole."  *Id.* at 5.

consecutive term of 16 months to 10 years' imprisonment for the second count of aggravated assault, and a concurrent term of one month to two years' imprisonment for the count of REAP. In accordance with the plea agreement, all of the sentences were imposed within the standard range of the sentencing guidelines.[5] On March 1, 2013, Vazquez filed a *pro se* motion to modify his sentence, which the trial court denied on March 5, 2013. No appeal was filed.

On October 15, 2013, Vazquez sent a *pro se* letter to the trial court, requesting permission to file a direct appeal *nunc pro tunc*. The court denied Vazquez's request that same day. Thereafter, on November 4, 2013, Vazquez filed a timely PCRA[6] petition, raising numerous claims of ineffectiveness of counsel, including counsel's failure to file a direct appeal. PCRA counsel was appointed and filed an amended petition on February 25, 2014, asserting plea counsel's ineffectiveness for failing to file post-sentence

_____

[5] As the trial court explained in its opinion, Vazquez had a prior record score of "0," so that the standard range sentence for the charge of aggravated assault under 18 Pa.C.S. § 2702(a)(1), with the deadly weapon-used enhancement, was 40 to 54 months' imprisonment, while the standard range for his conviction under Subsection (a)(4), without any enhancement, was nine to 16 months imprisonment. **See** Trial Court Opinion, 7/8/2015, at 7. **See also** 204 Pa. Code §§ 303.15, 303.16(a), and 303.17(b). Further, the standard range for Vazquez's conviction of REAP was restorative sanctions to one month imprisonment. **Id. See also** 204 Pa. Code §§ 303.15 and 303.16(a). Accordingly, each sentence was imposed at the top end of the standard range of the sentencing guidelines.

[6] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

motions or a direct appeal. Following a hearing on June 20, 2014, the PCRA court denied Vazquez's PCRA petition.

On appeal, a panel of this Court reversed the order of the PCRA court, and remanded the case with instructions that Vazquez be permitted to file a direct appeal *nunc pro tunc*. **Commonwealth v. Vazquez**, 121 A.3d 1124 (Pa. Super. 2015) (unpublished memorandum).[7] On April 8, 2015, the trial court entered an order permitting Vazquez to file a direct appeal *nunc pro tunc* within 30 days. **See** Order, 4/8/2015. This timely appeal followed.[8]

The sole issue raised on appeal is a challenge to the discretionary aspects of Vazquez's sentence.[9] "A challenge to the discretionary aspects of

---

[7] Specifically, the panel determined trial counsel failed to consult with Vazquez about filing a direct appeal, particularly since counsel "admitted receiving the *pro se* [post-sentence] motion before the expiration of the appeal period." **Vazquez**, **supra**, 121 A.3d 1124 (unpublished memorandum at 8).

[8] On May 4, 2015, the trial court ordered Vazquez to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Vazquez complied with the court's directive and filed a concise statement on May 18, 2015.

[9] It is well-settled that "where a defendant pleads guilty pursuant to a plea agreement specifying particular penalties, the defendant may not seek a discretionary appeal relating to those agreed-upon penalties." **Commonwealth v. Brown**, 982 A.2d 1017, 1019 (Pa. Super. 2009), *appeal denied*, 990 A.2d 726 (Pa. 2010). However, a defendant may seek a discretionary appeal of those sentencing terms that were not negotiated. **Id.** Here, the only agreed-upon sentencing term was that the minimum sentences imposed would be within the standard range of the sentencing guidelines.

a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. Hoch***, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Vazquez complied with the procedural requirements for this appeal by filing a timely *pro se* post-sentence motion for modification of sentence, and a notice of appeal *nunc pro tunc*, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether Vazquez raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). In the present case, Vazquez contends the sentence

- 6 -

imposed by the trial court was "manifestly excessive, and thus unjust, and ordered without proper consideration of mitigating factors such as [his] lack of criminal history, mental health problems and his acceptance of responsibility." Vazquez's Brief at 8. He further asserts the trial court failed to "adequately evaluate [his] personal characteristics … and his potential for rehabilitation." *Id.* at 13.

"[A]n allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review." ***Commonwealth v. Rhoades***, 8 A.3d 912, 918-919 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, 132 S.Ct. 1746 (U.S. 2012). However, this Court has held that an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015), *quoting* ***Commonwealth v. Dodge***, 77 A.3d 1263, 1272 (Pa. Super. 2013) (*en banc*), *appeal denied*, 91 A.3d 161 (Pa. 2014). Therefore, we proceed to an examination of Vazquez's argument on appeal.

Our standard of review of claims challenging the discretionary aspects of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish,

- 7 -

by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

Pennsylvania's Sentencing Code makes clear that, when sentencing a defendant, a trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). The Sentencing Code also mandates that an appellate court must vacate a sentence if it finds that the sentence, while within the applicable guidelines, "involve[d] circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2).

Here, the trial court explained the rationale for the sentence it imposed as follows:

> At the time of Sentencing, the Court received and reviewed a Pre-Sentence Investigation Report (hereinafter "PSI"), which contained [Vazquez's] family and work history, the Commonwealth and [Vazquez's] version of the events giving rise to the instant matter, [Vazquez's] mental health diagnoses of Schizophrenia and Bi-Polar Disorder, and Sentencing Guidelines. Further the Court heard testimony from Mandy Bailey, Brian Bailey, Jessica Vazquez, and [Vazquez]. Mr. and Mrs. Bailey testified as to how the events of June 9, 2012 had affected them both mentally and physically and the toll the entire incident had taken on the children who witnessed the incident. Mrs. Vazquez

testified that [Vazquez] suffers from mental illness but that when he takes his prescribed medication that he is a loving husband and father. She explained that on the day of the incident, he was without his medication. [Vazquez] testified that he had suffered no misconducts while awaiting his sentence and that at the time of the incident he, in his own opinion, was suffering a psychotic episode. He told the Court that he had had prior mental health commitments. He also expressed remorse for the victims.

At the conclusion of the testimony, the Court explained its reasoning for imposition of the sentence:

I appreciate that you have a mental illness. It was previously diagnosed. You were prescribed medication. You were not vigilant in maintaining your medication. You let it lapse. You smoked pot. You smoked pot to a degree that made you aggressive and paranoid, which is really an extreme.[10] Most pot smokers just chill in front of the TV, but you wanted more, you needed more, it affected your behavior, it affected your judgment and at the end of the day, Mr. Vazquez, … the community has the right to be protected from you, the Baileys have the right to some peace of mind, which I'm sure they don't have and what happens to you is really somewhere down the list. I hope that you are able to maintain good mental health. I hope that you will be treated well. I hope that you'll get your medication. I hope that you will have the opportunity for therapy, for education, for whatever kind of training, but at the end of the day, I don't really care, quite frankly. Because you have behaved in the most bestial way. There could be no good reason, there could be no issue between

_____

[10] We assume the fact that Vazquez smoked pot on the date of the assault is included in his version of the incident as recorded in the PSI. Unfortunately, the PSI is not included in the certified record on appeal. **See Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."), *appeal denied*, 916 A.2d 632 (Pa. 2007). Nevertheless, Vazquez does not dispute this fact in his brief.

> you and the Baileys that justified escalating to this level of violence and horror. None.
>
> [N.T., 2/19/2013, at 37-38]. …
>
> The sentence imposed clearly reflected the Court's concern for protection of the public, the gravity of the offense (i.e. the stabbing in the chest and back) as it relates to the actual victims and the children who witnessed the brutal attack, and [Vazquez's] underlying mental health diagnosis. Although significant in the amount of time imposed, the Court did not abuse its discretion, nor was the sentence manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Trial Court Opinion, 7/8/2015, at 7-9.

We find no reason to disturb the sentence imposed by the trial court. First, it is clear from a review of the court's opinion, as well as the sentencing transcript, that the court thoroughly reviewed and thoughtfully considered the PSI prepared prior to sentencing. It is well-settled that where a trial court had the benefit of a pre-sentence investigation report, we will presume the trial court was "aware of all appropriate sentencing factors and considerations." **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted).

Moreover, in this case, the court also had the benefit of a psychological evaluation of Vazquez, which was prepared in anticipation that he would enter a plea of guilty but mentally ill. N.T., 2/19/2013, at 22. However, trial counsel explained at the guilty plea hearing that after an "extensive conversation" with Vazquez, his client was "pretty adamant" that he wanted to enter a "straight guilty plea." N.T., 1/18/2013, at 5. Counsel further stated Vazquez believed a plea of "guilty but mentally ill [would] adversely

- 10 -

affect his opportunity for parole." *Id.* In any event, the psychological evaluation stated Vazquez suffers from "Schizophrenia – paranoid type with command delusions[.]"[11] N.T., 2/19/2013, Exhibit D-1, Forensic Psychological Evaluation Mental Status, at 5. Therefore, the court was well aware of Vazquez's mental health issues at the time of sentencing.

Under the facts of this case, we simply cannot conclude Vazquez's sentence was manifestly excessive. The Commonwealth presented evidence at the sentencing hearing concerning the significant non-physical injuries that resulted from Vazquez's actions. Brian Bailey testified that his children with Jessica Vazquez, who witnessed the brutal attack, continue to suffer from nightmares and an extreme fear of knives.[12] N.T., 219/2013, at 15-16. Brian Bailey also testified that he had been granted a protection from abuse order against Vazquez with respect to those children in November of 2011,

_____

[11] The evaluation also concluded that at the time of the crime, Vazquez "was laboring under such a defect or reason, from disease of the mined, as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know [what] he was doing [] was wrong." N.T., 2/19/2013, Exhibit D-1, Forensic Psychological Evaluation Mental Status, at 5. The trial court conducted an extensive colloquy with Vazquez, and his trial counsel, to ensure Vazquez understood the evaluation, as well as the potential plea of guilty but mentally ill, which he chose to forego. *See* N.T., 1/18/2013, at 23-28.

[12] The children were five and eight years old at the time of the sentencing hearing. N.T., 2/19/2013, at 15-16.

after Vazquez held a knife to Bailey's then four-year-old daughter's throat.[13] *Id.* at 16. Brian Bailey explained that Vazquez's actions have also affected his children's relationship with their mother, Vazquez's wife, because Vazquez made "it very difficult for [her] to spend time with them." *Id.* The trial court reiterated that sentiment when it explained that Vazquez "ruined the relationship that [his wife is] able to have with her children." *Id.* at 36. *See id.* at 36-37 ("I would have to believe that even if she is able to get unsupervised visits with them as much as they love her, they will always have in the back of their minds where are you in all of this? Do they have to be afraid of you?").

Accordingly, our review of the certified record, the parties' briefs and the relevant case law, reveals no abuse of discretion on the part of the trial court in imposing an aggregate sentence of 70 months to 30 years' imprisonment for Vazquez's brutal assault on the Baileys in front of Vazquez's stepchildren.

Judgment of sentence affirmed.

---

[13] As noted *supra*, this act precipitated Vazquez's second hospitalization. *See supra*, n.3, *citing* N.T., 1/18/2013, at 15.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/6/2016</u>